IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

———————————————————————

LAURIE G.,

                    Plaintiff,

          v.                              Civil Action No.
                                          8:21-CV-1232 (DEP)


KILOLO KIJAKAZI, Acting Commissioner of
Social Security,

                    Defendant.

———————————————————————

APPEARANCES:                    OF COUNSEL:

FOR PLAINTIFF

SCHNEIDER & PALCSIK            MARK A. SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, NY 12901

FOR DEFENDANT

SOCIAL SECURITY ADMIN.        HEETANO SHAMSOONDAR, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


DECISION AND ORDER[1]

---

[1]      This matter is before me based upon consent of the parties, pursuant to 28 U.S.C. § 636(c).

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), to challenge a determination of the Commissioner of Social Security ("Commissioner") finding that she was not disabled between February 29, 2016 and April 5, 2018, and, accordingly, is ineligible for the supplemental security income ("SSI") benefits for which she has applied for that period of time.  For the reasons set forth below, I conclude that the Commissioner's determination did not result from the application of proper legal principles and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in April of 1975, and is currently forty-seven years of age.  She was forty years old at the time of her application for benefits in February of 2016.  Plaintiff stands five feet nine inches in height, and weighed between approximately three hundred and thirty-five and three hundred and fifty pounds during the relevant time period.  Plaintiff reported at the administrative hearing that she lives in a house with her two daughters in Ticonderoga, New York.

In terms of education, plaintiff graduated from high school with an individualized education plan ("IEP") diploma and completed training to become licensed as a certified nursing assistant ("CNA").  Plaintiff reports that she worked for approximately fifteen years as a CNA, before she was

2

fired in 2006.  She has not worked since that time.

Plaintiff alleges that she suffers from both physical and mental impairments, including degenerative disc disease, numbness in her left leg, diabetes, depression, and a learning disability.  During the relevant period, plaintiff treated for her impairments with treating physician Dr. Kathleen Huestis and licensed clinical social worker ("LCSW") Richard Jack at the Ticonderoga Health Center, sources at Saratoga Hospital Pain Management Center, and Dr. Armin Afsar-Keshmiri at Saratoga Spine.

Plaintiff testified at an administrative hearing conducted in 2018 that she cannot work primarily due to the effects of her back pain and depression.  She reported that her back pain prevents her from lifting and standing or sitting for too long at one time.  She is able to drive, but has to shift her hips and stop to stretch if the drive is long.  Plaintiff reported that she can perform chores around the house, although it takes her longer to do them now.  Her pain is approximately at a six or seven out of ten on most days, causing her to need to get up and move around often.  She also testified that she experiences neuropathy in her legs that is more intermittent.  In addition to her back pain, plaintiff reported suffering from depression due to getting overwhelmed by all of her responsibilities.  She also testified that she experiences headaches frequently that make her feel

nauseated.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

As is relevant to the current appeal, plaintiff applied for SSI payments under Title XVI of the Social Security Act on February 29, 2016.  In support of her application, she claimed to be disabled due to degenerative disc disease, numbness in her left leg, diabetes, depression, and a learning disability.

A hearing was conducted on April 25, 2018, by Administrative Law Judge ("ALJ") Asad M. Ba-Yunus to address plaintiff's application for benefits.  ALJ Ba-Yunus thereafter issued an unfavorable decision on May 22, 2018.  On February 7, 2019, the Social Security Appeals Council ("Appeals Council") declined to review that decision.  Plaintiff subsequently appealed to this court, resulting in the issuance on August 7, 2020, by U.S. Magistrate Judge Therese Wiley Dancks, of a bench decision and order affirming the ALJ's determination.  Plaintiff appealed that judgment, and the Second Circuit Court of Appeals remanded the matter back to the Agency on May 24, 2021, finding that the ALJ had failed to provide adequate grounds under the applicable regulations for failing to fully credit the opinion from plaintiff's treating physician.  Based on that ruling, the Appeals

Council remanded the matter to the ALJ on July 20, 2021.  ALJ Ba-Yunus

conducted a second hearing on October 25, 2021, at which he obtained

testimony from a vocational expert, and issued a second unfavorable

decision on November 15, 2021.   Plaintiff subsequently appealed again to

this court, pursuant 20 C.F.R. § 416.1484.

      B.    The ALJ's Decision

In his decision, ALJ Ba-Yunus applied the familiar, five-step

sequential test for determining disability.  At step one, he found that plaintiff

had not engaged in substantial gainful activity during the relevant period.

Proceeding to step two, ALJ Ba-Yunus found that plaintiff suffers from

severe impairments that impose more than minimal limitations on her ability

to perform basic work functions, including degenerative disc disease,

degenerative joint disease, obesity, headaches, a depressive disorder, and

a learning disability, as well as the additional impairment of a pulmonary

embolus as of April 6, 2018.  As part of his step two finding, the ALJ also

indicated that he found plaintiff's diabetes with peripheral neuropathy and

knee impairment to be non-severe during the relevant period.

At step three, ALJ Ba-Yunus examined the governing regulations of

the Commissioner setting forth presumptively disabling conditions (the

"Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that

plaintiff's conditions do not meet or medically equal any of those listed conditions, specifically considering Listings 1.00 and 12.00 related to plaintiff's spinal impairment and depression.

ALJ Ba-Yunus next surveyed the available record evidence and concluded that, for the period from February 29, 2016 until April 6, 2018, notwithstanding her impairments, plaintiff retained the residual functional capacity ("RFC") to perform a range of work at the light exertional level with the following additional restrictions:

> she could frequently reach overhead bilaterally, occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, climb ladders, ropes, and scaffolds, avoid all hazards including unprotected heights and dangerous machinery, and would be limited to unskilled, simple, routine tasks, and could tolerate only occasional changes in a routine work setting.

ALJ Ba-Yunus further found that, beginning April 6, 2018, plaintiff had the RFC to perform a range of sedentary work with the following additional restrictions:

> the claimant is capable of performing postural activities occasionally. The claimant must avoid concentrated exposure to hazardous machinery and unprotected heights, noise, and vibration. The claimant would be off-task approximately 20% of the workday in addition to regular breaks and would be predicted to be absent from work three (3) days per month.

6

ALJ Ba-Yunus then found at step four that, with either of the above RFC findings, plaintiff is unable to perform her past relevant work as a CNA.  Proceeding to step five, the ALJ elicited the testimony of a vocational expert ("VE") regarding how plaintiff's limitations would impact her ability to perform other work and concluded, in light of the VE's testimony, that, from February 29, 2016 through April 5, 2018, plaintiff remained able to perform work available in the national economy, citing as representative positions price marker, mail sorter, and electrical assembler.  The ALJ further found, however, that, beginning April 6, 2018, there was no work in the national economy that plaintiff was able to perform.  Based upon these findings, ALJ Ba-Yunus concluded that plaintiff was not disabled for the period from February 29, 2016 through April 5, 2018, but that she became disabled on April 6, 2018.

C.    This Action

Plaintiff commenced this action on November 15, 2021.[2]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ (1) erred in assessing the opinion from treating physician Dr. Kathleen Huestis

---

[2]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the recently enacted Supplemental Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

by failing to provide proper reasons supported by substantial evidence for rejecting that opinion, (2) should have found that plaintiff was disabled for the entire relevant period due to her combination of impairments, and (3) erred when assessing her subjective reports of symptoms that indicate greater limitations than accounted for in the RFC.  Dkt. No. 15.  Plaintiff additionally argues that the court should afford deference to the subsequent favorable determination by a different ALJ in which plaintiff was found to be disabled beginning the day after the time period involved in the current appeal.  *Id.*

Oral argument was conducted in this matter, by telephone, on January 26, 2023, at which time decision was reserved.

III.   DISCUSSION

A.   Scope of Review

A court's review under 42 U.S.C. § 405(g) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence.  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).  Where there

8

is reasonable doubt as to whether the ALJ applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987).  If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

      B.    Disability Determination: The Five-Step Evaluation Process

The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether

10

the claimant is engaging in substantial gainful activity; if so, then the

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§

404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the

second step involves an examination of whether the claimant has a severe

impairment or combination of impairments that significantly restricts his or

her physical or mental ability to perform basic work activities.  *Id.* §§

404.1520(c), 416.920(c).  If the claimant is found to suffer from such an

impairment, the agency must next determine whether it meets or equals an

impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d),

416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant

is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149

(N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir.

1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an

assessment of whether the claimant's RFC precludes the performance of

his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).

If it is determined that it does, then as a final matter, the agency must

examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g),

416.920(g).

The burden of showing that the claimant cannot perform past work

lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it

becomes incumbent on the agency to prove that the claimant is capable of

performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether

that burden has been met, the ALJ should consider the claimant's RFC,

age, education, past work experience, and transferability of skills.  *Ferraris*,

728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

    C.   <u>Analysis</u>

    Plaintiff's primary argument revolves around the ALJ's choice to

afford only minimal weight to a medical source statement from treating

physician Dr. Kathleen Huestis for the period between February 29, 2016,

and April 5, 2018.  The Second Circuit previously found that remand was

warranted based on the ALJ's faulty analysis of that opinion in the 2018

determination.  The question presented to me now is whether the ALJ has

remedied that deficiency in the present determination.

    Because plaintiff's applications were filed prior to March 17, 2017, the

prior regulations governing the evaluation of opinion evidence, which have

since been amended, apply to her claim.  Under those regulations, the ALJ

was required to consider whether the treating physician's opinion was

entitled to controlling weight, which must be afforded "so long as it is well

supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with (or contradicted by) other

substantial evidence in the claimant's case record. *Schillo v. Kijakazi*, 31

F.4th 64, 75 (2d Cir. 2022). If it is not entitled to controlling weight, the ALJ

must then determine what degree of weight it is otherwise entitled to by

considering factors such as (1) the frequency, length, nature, and extent of

treatment, (2) the amount of medical evidence supporting the opinion, (3)

the consistency of the opinion with the remaining medical evidence, and (4)

whether the physician is a specialist. *Estrella v. Berryhill*, 925 F.3d 90, 95-

96 (2d Cir. 2019). In making these findings, the ALJ is required to provide

"good reasons" for the weight afforded to the treating physicians' opinions,

defined by the Second Circuit as "reasons supported by substantial

evidence in the record." *Schillo*, 31 F.4th at 75 (citing *Estrella*, 925 F.3d at

96). Moreover, when considering the weight to which the treating

physician's opinion is entitled at the second step of this analysis, the ALJ is

required to explicitly apply the above factors in his or her analysis; failure to

do so is procedural error. *Schillo*, 31 F.4th at 75. However, such error may

be held harmless "if the ALJ has otherwise provided 'good reasons' for its

weight assignment" or the court is assured that "'the substance of the

treating physician rule was not traversed.'" *Schillo*, 31 F.4th at 75 (quoting

*Estrella*, 925 F.3d at 96).

On March 5, 2018, Dr. Kathleen Heustis opined that, due to her impairments, plaintiff was limited to lifting and carrying less than ten pounds even occasionally, standing or walking about two hours in an eight-hour workday, and sitting about six hours in an eight-hour workday.  AT 546.  Dr. Huestis opined that plaintiff would need to lie down at unpredictable intervals during the workday for less than two hours total in an eight-hour workday, and that she would need to have the opportunity to shift at will between sitting and standing or walking.  *Id.*  Dr. Huestis indicated that these limitations are supported by magnetic resource imaging ("MRI") findings of her lumbar spine that show narrowing and disc protrusion.  *Id.*  Dr. Huestis further opined that plaintiff could occasionally twist and climb stairs, but could never stoop, crouch, or climb ladders, and that she was limited to an unspecified degree in her abilities to reach, push, and pull.  AT 547.  She opined moreover that plaintiff would be absent from work about three times per month, that her pain would prevent adequate performance of daily activities, that physical activity greatly increases her pain and causes the abandonment of tasks related to daily activities, and that her medications will severely limit her effectiveness in the workplace due to distraction, inattention, or drowsiness.  AT 547-48.

The ALJ found that Dr. Huestis' medical source statement did not merit controlling weight, or even more than minimal weight, for the period prior to April 6, 2018, based on his finding that the opinion "is contradicted by other substantial evidence of record, including even her own treatment notes."  AT 725.  The ALJ further stated as follows, which I find bears repeating in full:

> In part, this treating source appears to have exaggerated the effects of pain and medications. Within her own records, the claimant was described as being in no acute distress and the progress notes documented no side effects of prescribed medications and that pain is controlled with tramadol and/or the claimant is documented as coping. There are also no details of any observations of the severity of the claimant's pain. In fact, in 2017, the claimant was reported as only taking the medication when needed, and that she took it at bedtime (Exhibit B13F).
>
> Further limiting the weight and persuasiveness of Dr. Huestis's opinion, the assessment that the claimant is reduced to sedentary activities, having significantly restricted lifting, having a need to lie down at unpredictable intervals, having work-place absences, and never being able to stoop are also inconsistent with the treating source's own office notes (Exhibit B13F), and that of the orthopedic surgeon who only recommended pain management and found no surgical intervention necessary (Exhibit B1F, B14F). The claimant's pain management specialist also noted positive relief from epidural injections and improvement of the claimant's left lower extremity symptoms (Exhibits B8F, B10F, B11F, and B15F). Moreover, the claimant reported greater than 75% pain reduction and having improved ambulation (Id.). She continued to use an LSO with prolonged standing and walking, but was able to do so. She was also documented

as having a TENS unit, but not utilizing it. Although continuation of "some back pain" was noted, muscle strength and tone were normal and there were no bony abnormalities (Exhibits B11F, B14F, and B15F). Similarly, Dr. Huestis' records outlined normal ranges of motion and only pain on palpation and not with motion (Exhibits B13F. The treating primary care provider also noted intact sensation, no paresthesia, and that back pain was controlled with medication (Exhibit B13F, paged 10-11 and 16-17). There was no objective measure for workplace absences within her progress notes. The claimant was not noted to regularly miss appointments or even be late. The office notes also did not contain any reference to the claimant's being in such pain to suggest missed work or unscheduled breaks.

Additionally, in contrast to Dr. Huestis's opinion, the earlier records from North Country Sport Medicine showed right meniscal repair, but no instability (Exhibit B1F). Saratoga spine records showed she was neurologically intact, and had no balance problems or weakness (Exhibit B14F). The absenteeism and unexpected breaks portion of Dr. Huestis's opinion are also inconsistent with the opinion of consultative examiner Dr. Paolano, who found only some decreased range of motion, but nothing further (Exhibit B4F). In fact, the consultative examiner did not limit the claimant's ability to lift, sit, stand, or walk (Id.) It is also noted that Dr. Huestis's opinion is inconsistent with the opinions of both Dr. Osika and Dr. Marks's opinions in that the claimant's attention and concentration are not as limited as Dr. Huestis seems to suggest (Exhibits B9F, B4A). Notably, Dr. Huestis is a family medicine physician, and not a psychiatrist or psychologist, as are Drs. Osika and Marks.

It is significant to note that, on the date the claimant was evaluated and presented for to have the "ability to work" paperwork associated with the Dr. Huestis's opinion, the claimant's back was documented as "bothering her" and that this was typical for cold days (Exhibit B13F). However,

as consistently noted in the other treatment records, the claimant was in no acute distress, she presented with normal mood and affect, was active and alert, and was experiencing no dyspnea (Id.). Additionally, the diabetes remained without complications and medications were being decreased (Id.). Even the treatment visit one month prior to Dr. Huestis's opinion failed to document clinical findings based on a physical examination or specific complaints (Id.). Thus, even around the time the assessment was made, there was no consistent objective support to find that pain was present to such an extent as to be distracting to adequate performance of daily activities or work, that activity greatly increased pain causing abandonment of tasks related to daily activities, or that her medications severely limit the claimant's effectiveness due to distraction, inattention, drowsiness, etc., as suggested on the March 2018 medical source statement provided by Dr. Huestis (Exhibits B12F and B13F, pages 2-5).

Furthermore, when looking at the totality of the record, the claimant's own reported activities show a higher level of functioning than suggested by the treating source. For instance, her reported activities are relatively inconsistent with the restrictions opined by Dr. Huestis. In fact, her reported activities more closely represent the established residual functional capacity. For instance, the claimant continues to drive and reports having no significant limitations with such (Hearing Test.). The claimant has noted that she is a single mother and that her children have disabilities, which is corroborated within the treatment notes of Dr. Huestis and suggestive that extra time and attendance must be administered to the caring for the children (Id., Exhibit B13F). The claimant has also stated that she does all of the household chores by herself, but that it takes a lot more time to do it (Hearing Test.). The claimant also does the laundry, dishes and shops. The claimant also reported that she goes to the stores, banks, and appointments on a daily basis (Hearing Test., Exhibits B5E, B19E, and B9F).

I note that the Court of Appeals opined that I "erred by substituting [my] own view for that of the treating physician, Dr. Huestis." However, the role of the Administrative Law Judge in determining how much weight to give an opinion, as provided in the Burgess, is to analyze whether "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record" (Burgess, 537 F.3d at 129). I cannot simply adopt a treating source's opinion when it has such inconsistencies with the other opinions in the record and the remaining treatment record, including that of Dr. Huestis's own clinical observations and findings. In summary of the above detailed analysis, while Dr. Huestis has had a significant frequency, length, and extent of treatment, her opinion for the bulk of the adjudicative period is not well supported by even her own treatment record, the treatment record of the claimant's treating orthopedic surgeon, or that of the claimant's treating pain management provider. Furthermore, her opinion is inconsistent with the treatment record and the opinions of Drs. Paolano, Osika, and Marks as discussed at length above. Finally, she is a general practitioner and not a specialist in orthopedics, neurology, pain management, psychiatry or psychology. Thus, I conclude that Dr. Huestis's opinion is not entitled to controlling weight, and is in fact afforded minimal weight during most of the adjudicatory period.

As the Second Circuit indicated in its remand order, there is no other medical source statement in the record regarding plaintiff's physical functioning that contradicts Dr. Huestis' opinion. The ALJ seemingly attempts to manufacture opinions in opposition to Dr. Huestis' medical source statement by citing to the evidence from consultative examiner Dr. Paolano, consultative examiner Dr. Thomas Osika, and state agency

psychological consultant Dr. M. Marks, but this represents a false equivalence. Both Dr. Osika and Dr. Marks provided opinions regarding the effects of plaintiff's depression; although her back impairment and diabetes were mentioned, there is no indication that those sources based their opinions on the effects of plaintiff's physical impairments, particularly her pain. Accordingly, to the extent that Dr. Huestis rendered opinions concerning absences or other limitations based on plaintiff's physical pain, those opinions do not necessarily contradict hers. I note, moreover, that, although Dr. Paolano did conduct a physical examination of plaintiff, he did not, as the ALJ appears to assert, provide any functional opinion. The ALJ's statement that Dr. Paolano did not opine any limitations in her ability to lift, sit, stand or walk is therefore a red herring, and his failure to provide an opinion does not lead to a conclusion that he found that no limitations were present. Additionally, Dr. Paolano's examination was conducted in September of 2015 – approximately six months prior to the start of the relevant period in this case. AT 383. Therefore, despite the ALJ's assertion that the above three opinions are inconsistent with Dr. Huestis' opinion, I find that rationale to be unsupported by substantial evidence because, to the extent they are opinions, none of them directly contradict the majority of Dr. Huestis' opinion.

Although it is true that an ALJ need not rely on any medical opinion where the treatment records provide sufficient information to permit lay determination of a claimant's work-related functioning, I am not convinced that this is such a case under the circumstances, as will be discussed below.  *See Cook v. Comm'r of Soc. Sec.*, 818F. App'x 108, 109-10 (2d Cir. 2020) (noting that, "although there was no medical opinion providing specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity'") (quoting *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 24 (2d Cir. 2013)).

When evaluating the medical source statement from Dr. Huestis, it should also be noted that, in addition to providing the only medical source statement regarding plaintiff's physical level of functioning during the unfavorable period, she explicitly stated within the opinion form that plaintiff's exertional limitations were supported by the MRI of her lumbar spine revealing narrowing and disc protrusion.  AT 546.  Yet, despite this explanation and interpretation of the imaging by the treating medical professional, the ALJ stated that, although he acknowledged "that there is a lumbar MRI that shows moderate to severe central canal compromise or

20

stenosis causing mild foraminal narrowing" and electromyogram ("EMG")
testing corroborating radiation into the left leg, he nonetheless found that
"the positive diagnostic evidence does not present as causing residual
problems to the level alleged," citing to progress notes of certain normal
musculoskeletal examination findings.  AT 727.  It therefore appears that
the ALJ interpreted the MRI findings as not being evidence of severe
restrictions based on his own review of the evidence without explaining why
his own interpretation of that medical evidence was more correct than that
of Dr. Huestis.  Although an ALJ is certainly entitled to weigh all of the
record evidence, in a case such as this, where the treating source has
interpreted objective medical imaging as being indicative of a certain level
of restriction, an ALJ's finding to the contrary, unless based on the contrary
assessment of another medical source, represents little more than an
impermissible substitution of his or her own lay opinion for that of a medical
source.  *See Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ
is not permitted to substitute his own expertise or view of the medical proof
for the treating physician's opinion or for any competent medical opinion.");
*see also Marie R. v. Comm'r of Soc. Sec.*, 21-CV-0775, 2022 WL 2180989,
at *21 (N.D.N.Y. June 14, 2022) (Hummel, M.J.) (collecting cases standing
for the proposition that an ALJ is not permitted to interpret raw medical data

into functional terms without a medical advisor's assessment).

The bulk of the ALJ's rationale for rejecting Dr. Huestis' opinion during the period for which he found plaintiff was not disabled hinges on his finding that the opinion is not supported by Dr. Huestis' own treatment notes and not consistent with the other evidence in the record. As to Dr. Huestis' records, the ALJ cites to mostly normal findings, ignoring the context of the cited treatment notes. Many of Dr. Huestis' individual records were for treatment unrelated to her lumbar spine impairment, and therefore do not include any indication her lower back was actually assessed on those occasions. Notably, the report of a physical examination conducted on March 5, 2018 – which is the date Dr. Huestis wrote her medical source statement – does not indicate that an examination of plaintiff's lower back was actually performed. AT 550. The ALJ's assumption that this equates to proof that plaintiff experienced no abnormalities on that date is not sufficient evidence. On other occasions, Dr. Huestis documented discomfort and tenderness to palpation in the lumbar area when she did assess plaintiff's back. *See, e.g.*, AT 455, 623. Of note, in October of 2016, plaintiff reported that her back pain was causing her to lean and rendered her barely able to walk most of the time, resulting in completion by Dr. Huestis of a form for a parking pass. AT 609-

10.  I note also that, although supportability of the source's own notes is one of the relevant factors for assessing a treating physician's opinion, much of plaintiff's focused treatment for her back pain was performed by specialists, particularly sources at the Saratoga Hospital Pain Management Center.

Those pain management treatment records consistently show that, even with the various treatments she underwent, she displayed reduced lumbar spine range of motion with pain upon motion and tenderness in her lumbar back area throughout the relevant period.  *See, e.g.*, AT 501-02, 507-08, 514-15, 536-37, 647, 652, 662.  Further, through most of 2015 and 2016, plaintiff also consistently displayed an antalgic gait with decreased left lower extremity stance on those examinations.  AT 501, 507, 514, 537, 532.  On some examinations, she further showed signs of deconditioning, diminished upper and lower extremity strength, and mildly limited range of motion in her lower extremities.  AT 533, 643.  In March of 2017, it was observed that plaintiff had difficulty transitioning from sitting to standing. AT 642.  In explaining why he found the evidence to be broadly inconsistent with Dr. Huestis' opinion, the ALJ notably ignores all of these consistent observations from the pain management treatment providers, citing only certain other portions of the examinations that were noted to be

normal.  AT 725-26.  This selective view of the evidence undermines the

ALJ's finding and appears to represent a substitution of his own lay opinion

for that of a medical source, as he arbitrarily determined that the absence

of neurological, balance, or weakness issues was more relevant to the

assessment of plaintiff's functioning than any of the above positive findings.

Such a faulty assessment of the evidence cannot constitute substantial

evidence to support the rejection of a treating physician's opinion.

Further, I find many of the ALJ's statements supporting his finding

that Dr. Huestis exaggerated the effects of plaintiff's pain to be based on a

selective or even, in some cases, misrepresentative review of the record.

As to the ALJ's assertion that plaintiff's pain is controlled on tramadol, or

that she is at least coping with it, such finding is insufficient to provide

substantial support for his finding.  Although plaintiff did report in August of

2017 that tramadol was controlling her pain, in June 2017 she had reported

only that it was dulling the pain enough that she could sleep, and in

September of 2017, she reported that she was merely coping with the pain.

AT 553.  Pain management notes from the same time indicate that plaintiff

reported tramadol provided only partial relief.  AT 651.  Further, in February

of 2018, she was instructed to try and reduce her use of tramadol from

daily to as needed because of interactions with her other medications.  AT

553.  Dr. Huestis' treatment notes therefore suggest that plaintiff's pain fluctuated and was not constantly controlled.  The ALJ's reliance on the fact that she was "coping" with her pain is also a misdirection; the mere fact of coping does not equate to having a level of pain control that would render her more functional that Dr. Huestis broadly opined.

The ALJ further relied on reports of relief with injections, but the record is replete with complaints to Dr. Huestis and her pain management physicians that the injections generally did not help her back pain much, and if they did result in some improvement, it was short-lived.  *See, e.g.*, AT 513, 531, 538, 569, 641-42.  The ALJ also stated that plaintiff was not recommended for surgery, but again ignores the full context of the various treatment notes related to that issue.  In May 2015, Dr. Afsar-Koshmiri indicated that a lumbar laminectomy and discectomy would likely not improve her back pain, and he was therefore hesitant to recommend surgical treatment.  AT 364.  In April of 2017, Dr. Huestis noted that plaintiff was nonetheless scheduled for back surgery.  AT 581.

The ALJ's finding that Dr. Huestis appeared to exaggerate the effect of plaintiff's pain also ignores the fact that the pain management records in particular consistently document reports of significant pain and difficulty functioning.  Most notably, in October of 2017, at a time when plaintiff had

25

been receiving various treatments and taking tramadol, she reported to her

pain management providers that, although she had experienced some

relief, she was experiencing pain and stiffness that limited her ability to

perform household chores or yardwork and that she required significant

assistance from her daughter to accomplish daily tasks.  AT 660.  Although

this instance might represent an exacerbation of her pain, the ALJ had a

responsibility to balance evidence of times of increased symptoms with

those times when plaintiff's symptoms were somewhat improved, and his

failure to do so further undermines his reasons for rejecting the opinion

from Dr. Huestis.

The ALJ further cited to the plaintiff's reported activities of daily living

in support of his finding that Dr. Huestis' opinion should be entitled to

minimal weight.  AT 726-27.  Specifically, he noted plaintiff's reports that

she remained able to drive, care for two daughters with special needs as a

single mother, do all household chores – although the ALJ did

acknowledge that those chores take her "a lot more time to do" – and go to

stores, banks, and appointments on a daily basis.  *Id.*  I note that the

Second Circuit, in its decision regarding the prior ALJ determination, found

that the ALJ's reliance on the same reported activities "did not provide

adequate grounds for not fully crediting the opinion of the treating

physician." AT 778-79, 835-36. Given that the ALJ reused the same paragraph regarding activities of daily living from the vacated determination verbatim in his most recent determination, the Second Circuit's criticism of that analysis remains. *See also Colgan v. Kijakazi*, 22 F.4th 353, 363 (2d Cir. 2022) (finding that reported activities, including caring for two children as a single mother, performing household chores, and attending medical appointments did not constitute an adequate reason to reject a treating physician's opinion). Although the ALJ provided reasons beyond the reported activities in the current determination, as I have already explained, those reasons are also flawed and do not provide substantial support for the ALJ's rejection of Dr. Huestis' opinion for the period before April 6, 2018.

For all of the above reasons, I find that the ALJ has not complied with the treating physician rule related to Dr. Huestis' opinion in that he has not provided good reasons, supported by substantial evidence, for affording that opinion only minimal weight. Remand is therefore warranted.

Plaintiff argues that remand should be for a directed finding of disability and calculation of benefits without further proceedings based upon the evidence in the record. Dkt. No. 15, at 38. The Commissioner opposes that request, arguing that remand for further administrative

proceedings is the correct course of action because there is no conclusive evidence of disability in the record.  Dkt. No. 20, at 26.

"Sentence four of Section 405(g) provides district courts with the authority to affirm, reverse, or modify a decision of the Commissioner 'with or without remanding the case for a rehearing.'"  *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir. 2002) (quoting 42 U.S.C. § 405[g]).  The Second Circuit has indicated that, where there are gaps in the administrative record or the ALJ has applied an improper legal standard, remand for further development of the evidence is warranted.  *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999) (internal citations omitted).  Thus, remand for further administrative proceedings is the overwhelmingly preferred course where the administrative record contains gaps and further findings would "plainly help to assure the proper disposition" of the claim.  *Glass v. Colvin*, 12-CV-1332, 2014 WL 5361471, at *6 (N.D.N.Y. Oct. 21, 2014) (Young, J.) (citing *Butts*, 388 F.3d at 385).  If, however, "the record contains persuasive proof of disability, and a remand for evidentiary proceedings would serve no useful purpose," reversal for calculation of benefits is appropriate.  *Harry L. v. Comm'r of Soc. Sec.*, 18-CV-0282, 2019 WL 3937224, at *5 (N.D.N.Y. Aug. 5, 2019) (Baxter, M.J.) (citing *Rosa*, 168 F.3d at 82-83).  "The Court's determination whether to remand for further administrative proceedings or

for a calculation of benefits is discretionary." *Virginia D. F. v. Comm'r of Soc. Sec.*, 21-CV-0720, 2022 WL 4652361, at *23 (N.D.N.Y. Aug. 29, 2022) (Hummel, M.J.) (quoting *Milliken v. Saul*, 19-CV-9371, 2021 WL 1030606, at *12 (S.D.N.Y. Mar. 17, 2021)).

Under the circumstances presented, I find that this is one of the rare cases in which remand should be with a directed finding of disability. The period at issue is a discrete one that ended in 2018, and, given that the agency had the opportunity to develop the record further for the relevant period following the previous remand, there is no reason to believe that the record needs to be supplemented in any way. Indeed, even though the ALJ seemingly believed Dr. Huestis' opinion to be an inaccurate representation of plaintiff's functioning for the relevant period, he did not appear to find it warranted to seek an opinion from any other source or a medical expert before rendering his decision. *See Rosa v. Callahan*, 168 F.3d 72, at 83 (2d Cir. 1999) (indicating that "where [the] Court has no apparent basis to conclude that a more complete record might support the Commissioner's decision, [the Court has] opted simply to remand for a calculation of benefits"). The only basis for remand to conduct further proceedings would be allow the agency a third opportunity to properly apply the treating physician rule to Dr. Huestis' opinion. However, because Dr.

Huestis' opinion is uncontradicted by any other opinion and because I am

not convinced that the agency can justify declining to afford that opinion

controlling or at least significant weight when applying the treating

physician rule appropriately, I find that there is persuasive evidence of

disability in the record and that remand for further proceedings would serve

little useful purpose.  For these reasons, I find that this matter should be

remanded with a directed finding of disability for the period between

February 29, 2016, and April 5, 2018.

IV.    SUMMARY AND ORDER

After considering the record as a whole and the issues raised by the

plaintiff in support of his challenge to the Commissioner's determination, I

find that the determination did not result from the application of proper legal

principles and is not supported by substantial evidence.  Accordingly, it is

hereby

ORDERED that plaintiff's motion for judgment on the pleadings (Dkt.

No. 15) be GRANTED, defendant's motion for judgment on the pleadings

(Dkt. No. 20) be DENIED, the Commissioner's decision be VACATED, and

this matter remanded, with a directed finding of disability, solely for the

purpose of calculating benefits owing to plaintiff for the period between

February 29, 2016, and April 5, 2018, pursuant to sentence four of 42

U.S.C. § 405(g); and it is further respectfully

ORDERED that the clerk enter judgment consistent with this opinion.

Dated:      February 3, 2023                              _____
            Syracuse, NY                                 DAVID E. PEEBLES
                                                         U.S. Magistrate Judge